UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BANK OF AMERICA, N.A.
(USA), a national bank,

NO. CIV. S-05-780 LKK/KJM

      Plaintiff,

   v.

MIRIAM MILLER,

      Defendant.

_____/

This action was filed by plaintiff, Bank of America ("Bank") against one of its credit card holders, defendant Miriam Miller ("Miller").  Plaintiff seeks injunctive and declaratory relief to enjoin defendant and other similarly situated credit card holders from bringing suit against it under various California and Arizona statutes regulating billing practices.  This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, to stay the action.  I decide the matter based on the papers and pleadings filed herein and after oral argument.

1

1                                    **I.**

2                          **FACTUAL BACKGROUND**

3        Defendant Miriam Miller, a resident of Woodland,

4   California, has been a long time Bank of America credit card

5   holder.  When the Bank received Miller's credit card payments on

6   or before the next business day following a holiday due date, it

7   imposed interest charges on her account.  Id.  Miller challenged

8   the imposition of the interest charges, and the Bank reversed

9   them.  Despite reversing the specifically challenged charges,

10  however, the Bank continues these billing practices.  Id.

11       Miller founded and is director of the organization

12  Consumers Against Unfair Business Practices ("CAUBP").  On May

13  29, 2002, CAUBP filed suit in state court against the Bank,

14  alleging violations of § 9 and § 11 of the California Civil

15  Code[1], and section 1-303 of Arizona's Revised Statutes[2] which,

16  ───────────────────────

17      [1]  Cal. Civ. Code § 9 provides, in relevant part, that: "any
    act appointed by law or contract . . . to be performed on any day
    which is an optional bank holiday as defined in Section 7.1, by,
18  at, or through any bank or branch or office thereof, . . . may be
    performed on that optional bank holiday if the bank or branch or
19  office . . . is open for the transaction of business on that
    optional bank holiday, or, at the option of the person obligated
20  to perform the act, it may be performed on the next succeeding
    business day."
21
    Cal. Civ. Code § 11 provides that "[w]henever any act of a secular
22  nature, other than a work of necessity or mercy, is appointed by
    law or contract to be performed upon a particular day, which day
23  falls upon a holiday, it may be performed upon the next business
    day, with the same effect as if it had been performed upon the day
24  appointed."

25      [2]  Arizona Revised Statute § 1-303 provides that: "[w]hen
    anything of a secular nature, other than a work of necessity or
26  charity, is provided or agreed to be done upon a day named or

                                     2

1  according to Miller, prohibit banks from charging fees or

2  interest when a payment is posted on the first business day

3  after a holiday due date, when no fee or interest would have

4  been due if the payment had been posted on the Holiday due date.

5  Pl.'s Compl. at 8.

6      The Bank brought a motion for summary judgment in state

7  court claiming, inter alia, that the Truth In Lending Act

8  ("TILA"), 15 U.S.C. §§ 1601 et seq., preempts or precludes the

9  application of the California and Arizona statutes, and that the

10 National Bank Act ("Bank Act"), 12 U.S.C. §§ 21 et seq.,

11 precludes the application of the California statutes.  On April

12 4, 2003, the state court denied the Bank's motion for summary

13 judgment on the ground that the federal statutes do not preempt

14 or preclude the state statutes.  Def.'s Mot. to Dism., Ex. A at

15 1.

16      In November of 2004, California voters passed Proposition

17 64, which amended Business & Profession Code §§ 17200 et seq.,

18 California's Unfair Competition Law ("UCL"), to prohibit any

19 person, other than the state Attorney General or a local public

20 prosecutor, from bringing a UCL action unless that person has

21 suffered an injury in fact and has lost money or property.  The

22 parties agree that the amendment renders CAUBP an improper

23 plaintiff in the state action, since the organization itself has

24

25 within a time named, and the day or the last day thereof falls on
   a holiday, it may be performed on the next ensuing business day
26 with effect as though performed on the appointed day."

1 no account with the Bank and therefore cannot claim to have

2 suffered an injury in fact.  Def.'s Br. in Supp. of Mot. to

3 Dism. at 5.  Subsequent to the passage of Proposition 64, the

4 Bank filed a motion for judgment on the pleadings, contending

5 that CAUBP was no longer a proper plaintiff.  CAUBP argued to

6 the state court that Proposition 64 did not apply retroactively.

7 In the alternative, CAUBP asked that the court grant leave to

8 amend the complaint to substitute Miller as the plaintiff.

9 Compl., Ex. B at 1.  On May 18, 2005, the state court deferred

10 its decision pending the state Supreme Court's resolution of

11 currently pending cases in which it will examine the

12 retroactivity of Proposition 64 and the "propriety of amendment

13 to substitute a plaintiff with standing."  Def.'s Mot. to Dism.,

14 Ex. B at 1.

15     On April 20, 2005, the Bank filed this federal action

16 against Miller seeking declaratory relief and injunctive relief

17 enjoining defendant and others from enforcing the California and

18 Arizona statutes at issue.  Compl. at 8-9.  As in its defense

19 raised in the state action, the Bank contends that the TILA and

20 NBA preclude Miller from instituting an action against it.

21 Miller now moves to dismiss the federal action on the grounds

22 that it is not ripe, barred by the Anti-Injunction Act and the

23 California Anti-SLAPP law, or in the alternative, that the

24 action should be stayed under <u>Colorado River Water Conservation</u>

25 <u>Dist. v. United States</u>, 424 U.S. 800 (1976), and <u>Brillhart v.</u>

26 <u>Excess Ins. Co. of America</u>, 316 U.S. 491 (1942).  Def.'s Mot. to

1    Dism. at 7-10.

2                                  **II.**

3                               **ANALYSIS**

4        Miller first argues that the entire action should be

5    dismissed under Fed. R. Civ. P. 12(b)(1)[3] for lack of subject

6    matter jurisdiction because the claim is not ripe for review.

7    Def.'s Mot. to Dism. at 7.  As I explain below, I agree with

8    defendant's contention.

9    **A.   STANDARD FOR RIPENESS OF A CASE**

10       It is fundamental that federal courts may not hear cases

11   which are not ripe for judicial review.  Reno v. Catholic Social

12   Services, 509 U.S. 43, 57-58 (1993).  The ripeness inquiry has

13   both a constitutional component rooted in the case or

14   controversy requirement of Article III, and a prudential

15   component that focuses on whether the record is adequate to

16   ensure effective review.  City of Auburn v. Qwest Corp., 260

17   F.3d 1160 (9th Cir. 2001).  The Constitution requires that,

18   prior to the exercise of jurisdiction, there exist a

19   constitutional case or controversy, meaning that the issues

20   presented are definite and concrete, not hypothetical or

21   abstract.  Railway Mail Assoc. v. Corsi, 326 U.S. 88, 93 (1945).

22   The prudential component of ripeness focuses on two primary

23   considerations, the fitness of the issues for judicial decision

24   _____

25        [3] Defendant brings the motion under Fed. R. Civ. P. 12(b)(2).
     Because Rule 12(b)(2) relates to dismissal for lack of personal
     jurisdiction, I construe this motion to relate to dismissal under
26   Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

                                    5

1  and the hardship to the parties of withholding court

2  considerations.  <u>Abbott Labs v. Gardner</u>, 387 U.S. 136, 149

3  (1967).  To evaluate a challenge for lack of ripeness, a court

4  may consider evidence outside the pleadings.  <u>St. Clair v. City</u>

5  <u>of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989).

6  **B.   ANALYSIS**

7       **1.   <u>Constitutional Component</u>**

8       Here, the Bank and Miller have a dispute about the Bank's

9  holiday billing practices.  They have clearly taken adverse

10 positions with respect to the Bank's obligations under sections

11 9 and 11 of Cal. Civ. Code and 1-303 of Arizona Revised

12 Statutes.  Miller formed CAUBP, which brought suit against

13 plaintiff in state court on behalf of California Bank of America

14 credit card holders who were charged fees or interest based on

15 the disputed holiday billing.  Def.'s Mot. to Dism. at 3.  While

16 this action may arguable satisfy the constitutional component,

17 as I explain below, prudence cautions against finding this case

18 ripe for view.

19      **2.   <u>Prudential Component</u>**

20      Miller contends that this case is not ripe for review

21 because it is based on the Bank's speculative claim that Miller

22 will institute an action against it.  According to Miller, any

23 possibility of an action by Miller is based on contingent future

24 events which may never happen.  I agree.

25      "The doctrine of ripeness while related to the Article III

26 notion of justiciability, is a product of prudential

1  considerations 'ordinarily emphasiz[ing] a prospective

2  examination of the controversy which indicates that future

3  events may affect its structure in ways that determine its

4  present justiciability . . . '."  Nat'l Agr. Chemicals Ass'n v.

5  Rominger, 500 F.Supp. 465, 477 (E.D. Cal. 1980)(Karlton,

6  J.)(quoting L. Tribe, American Constitutional Law, at 61

7  (1978)).  "As a prudential matter," the Ninth Circuit has

8  cautioned against finding a claim ripe for consideration "if it

9  rests upon 'contingent future events that may not occur as

10 anticipated, or indeed may not occur at all.'"  Scott v.

11 Pasadena Unified Sch. Dist., 306 F.3d 646, 662 (9th Cir.

12 2002)(quoting Texas v. United States, 523 U.S. 296, 300 (1998)).

13 Prudential considerations of ripeness are discretionary, Thomas

14 v. Anchorage Equal Right Comm'n, 220 F.3d 1134, 1142 (9th Cir.

15 2000), and may include considerations of "comity to state

16 institutions."  13A C. Wright, A. Miller & E. Cooper, Federal

17 Practice and Procedure § 3532.1, at 115 (1984).

18      Here, the Bank's complaint indicates that its allegation

19 that Miller may in the future assert claims against it is

20 grounded on the prospect that CAUBP may be deemed an improper

21 plaintiff in the state action pursuant to Proposition 64 and, if

22 that is the case, CAUBP will seek to amend its complaint to

23 substitute Miller as the plaintiff in that case.  Compl. at 3.

24 The Bank's assertions are therefore completely contingent on the

25 California Supreme Court's opinion on whether Proposition 64

26 applies retroactively, and if so, whether other plaintiffs may

7

1  substitute those disqualified plaintiffs.  If the state Supreme

2  Court resolves that the Proposition does not apply

3  retroactively, then, of course, there is no reason to believe

4  that Miller will file any claims against the Bank.  Because this

5  future event may never happen, prudence requires that this court

6  refrain from adjudicating this premature action.  See Texas, 523

7  U.S. at 300.

8       The Bank insists that this case is ripe for review because

9  of what it characterizes as a threat of litigation that may be

10  resolved pursuant to its Declaratory Judgment Act claim.  The

11  Bank cites Societe de Conditionnement en Aluminum v. Hunter

12  Engineering Co., Inc., ("Societe"), 655 F.2d 938 (9th Cir.

13  1981), to support its position that it is enough that plaintiff

14  demonstrate a real and reasonable apprehension that the

15  defendant will take action against it.  Societe does not stand

16  for such a broad proposition.  The Circuit Court in that case

17  explained that "[a]n action for a declaratory judgment that a

18  patent is invalid, or that the plaintiff is not infringing, is a

19  case or controversy if the plaintiff has a real and reasonable

20  apprehension that he will be subject to liability if he

21  continues to manufacture his product."  Societe, 655 F.2d at

22  944.  That language follows the court's discussion of why

23  "[d]eclaratory relief is indisputably appropriate to patent

24  cases" to prevent a patentee from chilling competition by

25  "declaring that his competitors were infringing his patents and

26  threatening an infringement suit."  Id. at 943 (internal

1 quotation marks and citations omitted).  Accordingly, <u>Societe</u>

2 explained that a declaratory judgment plaintiff can meet the

3 actual controversy requirement by demonstrating a real and

4 reasonable apprehension that the defendant may commence an

5 action against it for patent infringement.  <u>Societe</u> therefore

6 cannot support the Bank's contention that ripeness requirements

7 are satisfied in this non-patent action by the Bank's

8 apprehension of the Supreme Court's ruling, which or may not

9 lead to a lawsuit by Miller against it.

10      Further, the general concerns over impending threats of

11 litigation, such as looming uncertainty about a party's course

12 of action or the possibility of being injured at any moment, are

13 not present here.  <u>See</u> <u>Id</u>.  The Bank does not allege that it has

14 changed any of the challenged billing practice or that its

15 practices have been impeded in any way.  Indeed, the status quo

16 remains, and there is nothing indicating that the Bank is in any

17 way in limbo or that it may suffer injury if this court does not

18 act.

19                            **III.**

20                    **CONCLUSION AND ORDER**

21      Accordingly, defendant's motion to dismiss is GRANTED.

22 Plaintiff's claims are dismissed without prejudice.

23      IT IS SO ORDERED.

24      DATED:  August 25, 2005.

                              /s/Lawrence K. Karlton
25                            LAWRENCE K. KARLTON
                              SENIOR JUDGE
26                            UNITED STATES DISTRICT COURT

                                9